## The UNITED STATES
### v.
### The FORT SILL APACHE TRIBE OF the STATE OF OKLAHOMA et al.
### Appeal No. 2–73.

United States Court of Claims.

July 13, 1973.

I. S. Weissbrodt, Washington, D. C., attorney of record, for appellees. Richmond F. Allan, Billings, Mont., of counsel.

Dean K. Dunsmore, Washington, D. C., with whom was Asst. Atty. Gen. Wallace H. Johnson, for appellant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KUNZIG and BENNETT, Judges.

PER CURIAM:

This case comes before the court on the appellee-plaintiffs' motion to dismiss the appeal of the defendant. Resolution of the issue involved in this case rests on the interpretation to be given section 20(b) of the Indian Claims Commission Act, 60 Stat. 1049, 1054, now 25 U.S.C. § 70s(b), dealing with the appealability of interlocutory orders of the Indian Claims Commission (ICC). The court has considered the case, without oral argument, upon the authorities and contentions presented in the motion, the response thereto and reply. It is concluded that the standards set by statute defining which interlocutory orders are appealable have not been met by the orders now the object of the appellant-defendant's appeal, necessitating, thus, the granting of the appellees' motion to dismiss.

On September 13, 1972, the ICC issued an opinion implementing an order [1] in which it granted the plaintiffs' motion to separate the claims raised in Docket No. 182 into two groups. The "group A claims" dealt with the removal of certain resources and the use of Indian lands prior to the date of taking.[2] The "group B claims" called for an accounting of the appellant-defendant's handling of the plaintiffs' land and property while they were prisoners of war on the Fort Sill Reservation. The defendant filed a motion for rehearing of the Commission's order allowing the separation of the Docket No. 182 claims, which was denied on October 18, 1972.[3]

Thereafter, the appellant-defendant filed a motion to dismiss the group B claims in which it presented five grounds for the dismissal: (1) Lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; (3) statute of limitations; (4) res judicata; and (5) the doctrine against splitting a cause of action. In an opinion issued on November 29, 1972,[4] the Commission denied the appellant-defendant's motion to dismiss the group B claims, and allowed the appellee-plaintiffs to amend their petition on February 27, 1973, the appellant filed its appeal in this court seeking review of both the September 13, 1972, and November 29, 1972, determinations of the Commission.

The Indian Claims Commission Act, 25 U.S.C. § 70s(b), defines those decisions of the ICC which may be appealed to this court.[5] In pertinent part, that section states:

> * * * In similar manner and with like effect either party may appeal to the Court of Claims from any interlocutory determination by the Commission *establishing the liability of the United States* notwithstanding such determination is not for any reason whatever final as to the amount of recovery; * * *. [Emphasis added.]

The focus of the case now before the court is whether these orders of the ICC (particularly the order announced on November 29, 1972) were determinations "establishing the liability of the United States." If they were not, the appellant-defendant must clearly wait until such determinations are made, or until a final decision is reached on the case as a whole, for its appeal to be timely.

## I. APPEALABILITY OF THE NOVEMBER 29, 1972 ORDER

The appellant-defendant admits that the November 29, 1972 order did not establish the liability of the United States

---

1. 28 Ind.Cl.Comm. 433, 452 (1972).

2. This claim was considered by the court on a procedural issue in United States v. The Fort Sill Apache Tribe of Oklahoma, 480, F.2d 819, 202 Ct.Cl. —— (1973).

3. 29 Ind.Cl.Comm. 126 (1972).

4. 29 Ind.Cl.Comm. 188 (1972).

5. 25 U.S.C. § 70s(a) provides that the Commission may certify to the Court of Claims any definite and distinct questions of law concerning which instructions are desired for the proper disposition of a claim.

in the traditional sense of the word "liability" but argues that said order "was directed to matters of law which go to liability," such as jurisdiction. It further contends that liability can only be shown where Indian title to the land is demonstrated *and* where unconscionable consideration was paid for such land. Yet, the Court of Claims in cases such as Sac & Fox Tribe v. United States, 315 F.2d 896, 161 Ct.Cl. 189, cert denied, 375 U.S. 921, 84 S.Ct. 226, 11 L.Ed.2d 165 (1963), and Minnesota Chippewa Tribe v. United States, 315 F.2d 906, 161 Ct.Cl. 258 (1963), has heard appeals from interlocutory orders of the ICC where only the issue of Indian title was decided adversely to the Government, leaving open the issue of valuation. Appellant concludes from this that the term "liability" found in 25 U.S.C. § 70s(b) must be defined broadly. The plaintiffs, of course, press for a stricter interpretation.

The interlocutory appeal portion of 25 U.S.C. § 70s was added to the Act in 1960[6] as the result of appropriation hearings before the Congress. At that time the Department of Justice was seeking a $500,000 appropriation to cover the costs of appraising aboriginal lands in California after the Commission had found that the Indians of California had valid title to lands for which they received no compensation.[7] Rather than pay for the appraisal while there was still a chance that it would become unnecessary if the Government were later to successfully appeal the liability portion of the Commission's decision, the Congress made it possible for either party to appeal interlocutory orders of the Commission wherein the United States is found liable. As the *Sac & Fox* and *Minnesota Chippewa* cases make clear, this court has not strictly defined the terms of 25 U.S.C. § 70s, at least in cases in which the Commission has already dealt with the issue of Indian title. The Department of Justice would like to see the money-saving purpose of this section

extended to cases like the one now at issue where the Commission has ruled adversely to the defendant on issues of law (such as jurisdiction, statute of limitations, etc.) which could be dispositive of the case as a whole since they go to the ultimate issue of liability.

Anytime interlocutory appeals are permitted, the possibility exists for the saving of the time and expense of unnecessary litigation, but still at a definite cost. That cost is the recurring interruption of the trial proceedings, an evil sought to be avoided by the finality doctrine. The 1960 addition to the Indian Claims Commission Act made a clear exception to the finality doctrine in force up to that time. The issue now is how large an exception it made and whether it will accommodate defendant-appellant's present contentions.

It is understandable that the appellant wishes to avoid the expense that would result from the accounting called for by the group B claims, where it still feels it has viable threshold defenses (jurisdiction, statute of limitations, etc.) that are reviewable on appeal. The major problem created by the appellant's position is that it just does not fit the statutory language. Disposition of a motion questioning ·the jurisdiction of the ICC would not reach the issue of the liability on the merits. In cases like *Minnesota Chippewa*, where the ICC decision has settled the issue of Indian title, while leaving open the valuation issue, it is easier to see the decision as one establishing liability and that is the way Congress apparently saw it. For the appellant to use cases like *Minnesota Chippewa* as an example of the flexible definition which the word "liability" has been given, and then use this to justify a still further extension of the already liberal definition, carries a good thing too far.

The legislative history which accompanies the 1960 change to § 70s(b) is, admittedly, narrow in its scope. For example, S.Rep.No.1925, 86th Cong., 2d

---

6. 74 Stat. 829 (1960).

7. Thompson v. United States, 8 Ind.Cl. Comm. 1 (1959).

Sess. (1960), states at page 17: "The amendment covers only those interlocutory orders establishing liability of the United States and is not intended to allow appeals from routine or procedural rulings of the Indian Claims Commission preliminary to such determinations of liability." Is the denial of a motion to dismiss, presenting threshold problems, a routine or procedural ruling?

Congress may not have considered the variety of determinations the ICC can enter when it used the language it did to identify those interlocutory orders which were intended to be appealable. Not all possible cases are so clear-cut on the issue of liability as the California Indian case, Thompson v. United States, 8 Ind. Cl.Comm. 1 (1959), which was the basis for the action of Congress in amending 25 U.S.C. § 70s(b). There, the ICC was able to determine liability clearly because it found the Indians had title; the Government took the title and extinguished it and paid *no* compensation therefor. All that could be left when that determination on liability became final was to make the valuation. Under its Rule 22(f)(1) and the statute, the ICC proceeds first on liability. In the usual case, valuation follows and then a determination of offsets, if any. The typical case thus has three stages. What the amended statute perhaps did not anticipate is the situation where title in Indians may be established, but there is no finding that it was taken or extinguished, which would establish liability, as in *Thompson*. In *Sac & Fox* and *Minnesota Chippewa*, the issue of the effect of the 1960 amendment to 25 U.S.C. § 70s(b) was not before the court and was not decided. Our instant case is one of these mutations that runs afoul of the statute that says interlocutory appeals from the ICC can only be had from a Commission determination establishing the liability of the United States. An appeal from the denial to dismiss group B claims does not lie now because liability hinges on the results of an accounting for the mishandling of Indian assets and upon determination of what beneficial interests, if any, the Indians were granted in lands of the Fort Sill Reservation. Therefore, reliance on cases where the impact of statutory requirement for liability as a basis for interlocutory appeal was not in issue, or on cases allowing interlocutory challenge after a determination of title and title extinguishment, which establishes liability, cannot be a precedent for the instant problem which appellant seeks to resolve with its collateral attack. Appellant argues, of course, that if its defenses to jurisdiction, etc., are valid, the liability issue is disposed of effectively. This, as noted above, does not reach the liability issue on the merits thereof. True, the dismissal of a threshold defense, or allowance thereof, seems to be more than a routine ruling but it does not determine liability and in this context is procedural. For the court to draw the line where appellant now would like to see it would seem to require the court to engage in judicial legislation rather than statutory interpretation.

We conclude, in the absence of compelling legislative history indicating that the court should read something into the language of section 70s(b) which is not otherwise apparent, that the appeal, challenged by appellees' motion to dismiss it, seeks review of an interlocutory ICC determination not covered by the interlocutory appeal provision of section 70s(b). Review of the determination of the Commission must await either a decision clearly establishing the liability of the United States or a final decision on the case as a whole. For these reasons, the appeal with respect to the November 29, 1972 determination of the ICC is untimely.

## II. APPEALABILITY OF THE SEPTEMBER 13, 1972 ORDER

The September 13 order merely granted the motion of the appellee-plaintiffs to separate the Docket No. 182 claims into groups A and B. Such a determination clearly is a "routine or procedural" ruling from which an interlocutory appeal does not lie by any stretch of the

language of section 70s. All of the preceding discussion applicable to the November 29, 1972 determination likewise covers the September 13 opinion and order. Appellant-defendant concedes that appealability of the September 13, 1972 order depends on successful challenge to the Commission's order of November 29, 1972. Challenge to the latter having been found unsupportable, the challenge to the September 13 order is moot.

In addition, however, section 70s requires that proper interlocutory appeals be taken within 3 months of the date of the determination. Even if October 18, 1972, the date on which the ICC denied the defendant's motion to rehear the issue decided on September 13, 1972, is used to start the running of the 3-month appeal period, the defendant's appeal, filed on February 27, 1973, was still too late, at least with respect to the September 13, 1972 determination.

For both of these reasons, it is concluded that the appeal of the September 13, 1972 determination is not well taken.

The appellees' motion to dismiss the appeal with respect to both the September 13, 1972 and November 29, 1972 orders is granted and the appeal is dismissed.