Vernice DUBOSE et al.

v.

Patricia Roberts HARRIS et al.

Claudia WALTER et al.

v.

Patricia Roberts HARRIS et al.

Janette LITTLE et al.

v.

Patricia Roberts HARRIS et al.

Civ. Nos. H–75–303, H–75–345, H–75–346.

United States District Court,
D. Connecticut.

May 9, 1977.

Dennis J. O'Brien, Norman K. Janes, Tolland-Windham Legal Assistance Program, Willimantic, Conn., for plaintiffs in No. H–75–303.

John A. Dziamba, Tolland-Windham Legal Assistance, Willimantic, Conn., James C. Sturdevant, Tolland-Windham Legal Assistance, Rockville, Conn., for plaintiffs in No. H–75–345.

Joan Pilver, Raymond Norko, Neighborhood Legal Services, Hartford, Conn., for plaintiffs in No. H–75–346.

Peter Dorsey, U. S. Atty., New Haven, Conn., Maryann Clifford, Dept. of Justice, Civ. Div., Robert S. Greenspan, Richard C. Livermore, U. S. Dept. of HUD, Washington, D. C., for defendants in all cases.

Rolland Castleman, West Hartford, Conn., Paul Michel, U. S. Dept. of Justice, Washington, D. C., for defendants in No. H–75–303.

Guy DeFrances, Meriden, Conn., for defendants in No. H–75–345.

James H. Shulman, Ribicoff & Kotkin, Hartford, Conn., for defendants in No. H–75–346.

## RULING ON MOTION FOR CONTEMPT

BLUMENFELD, District Judge.

These three lawsuits, consolidated for trial, concern the refusal of the Department of Housing and Urban Development ("HUD") and its Secretary to implement an operating cost subsidy program, enacted as Section 212 of the Housing and Community Development Act of 1974, 12 U.S.C. § 1715z–1(f)(3) and (g). On December 15, 1975, this court entered a preliminary injunction ordering the implementation of the program at three federally subsidized projects. 405 F.Supp. 1277 (D.Conn.1975). Plaintiffs now move for contempt, claiming that HUD is not making operating cost subsidy payments as required by the December 15, 1975 order. Defendants counter that in light of a stay issued on February 10, 1977 by the Court of Appeals for the

Second Circuit, they are in full compliance with the orders of this court.

## I.

Resolution of the present motion necessitates a brief review of the procedural history of these actions. The named plaintiffs in each of these consolidated actions are low-income residents of federally subsidized housing projects in Connecticut. While each action involves a different housing project, the cases present the common question of the legality of HUD's refusal to implement the operating cost subsidy program.

1. In October 1975, temporary restraining orders were issued in each of the cases. Defendants were ordered to establish an initial operating expense level at each of the three projects. The orders also restrained defendants from refusing to pay an operating cost subsidy on behalf of tenants of the projects who were paying more than 30% of their adjusted family income for rent.

2. On December 15, 1975, this court issued a preliminary injunction ordering the same relief as the October temporary restraining orders. In addition, it was determined that class action treatment was appropriate in each of the three cases. Class certification was by project:

"The plaintiff classes certified consist of those family units now residing, or who may at some future time reside, at one of the three Section 236 housing projects involved in this lawsuit who pay or will pay more than 30% of their 'adjusted family income' for rent as of the effective dates of the rent increases challenged here."

405 F.Supp. at 1280.

The injunction required the payment of operating cost subsidies coterminous with the effective date of rent increases at the three projects: October 1, 1975 for the project involved in *Dubose*, November 1, 1975 for the projects involved in *Walter* and *Little*.

*Defendants did not appeal this December 15, 1975 preliminary injunction.*

3. In the months following the December 15 preliminary injunction, six more suits were filed in this district. In each case, preliminary injunctions were issued.

4. On May 27, 1976, this court ruled upon plaintiffs' motion to amend class certification. Plaintiffs sought to expand the individual classes certified by project into a statewide class. "In view of the Secretary's continued refusal to implement the operating cost subsidy program for all Section 236 projects, and the multiplicity of litigation on this issue now developing in the District of Connecticut, the motion to recertify the class [was] granted." May 27, 1976 Ruling, at 3. The recertified class is

"comprised of all persons who now reside, or may at some future time reside, at one of the 101 housing projects in Connecticut eligible to receive an interest subsidy under Section 236 at which there has been a rent increase and who pay or will pay more than 30% of their 'adjusted family income' for rent as of the date the basic monthly rent was determined for each project."

May 27, 1976 Ruling at 5 (footnote omitted).

Recognizing that the "same relief [was] necessary to enforce the existing preliminary injunction with respect to the remaining Section 236 projects," HUD was enjoined from refusing to pay subsidies "to each project owner, [now part of the certified class] commencing with the rental payments due June 1, 1976, or the effective date of the rent increases, whichever is later." May 27, 1976 Ruling at 6 (footnote omitted).

5. This May 27, 1976 ruling was appealed to the Court of Appeals for the Second Circuit.

6. On June 28, 1976, this court denied defendants a stay pending appeal.

7. On July 20, 1976, the Second Circuit denied defendants a stay pending appeal.

8. On September 27, 1976, this court denied defendants' motion to dissolve the May 27, 1976 preliminary injunction.

9. Defendants appealed the September 27, 1976 ruling, and that appeal has been consolidated with the appeal from the May 27, 1976 ruling.

10. On October 18, 1976, the Supreme Court issued a stay in *Underwood v. Harris*, 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976), *staying* 414 F.Supp. 526 (D.D.C. 1976), *appeal pending* Nos. 76–1603, 76–1650, a national class action challenge to HUD's failure to implement the operating cost subsidy program.[1]

11. Relying on the Supreme Court's stay in *Underwood*, defendants renewed their motion to the Second Circuit for a stay pending appeal of the May 27, 1976 and September 27, 1976 rulings. On December 27, 1976, the Second Circuit granted that stay.

12. On February 10, 1977, the Director of the Hartford Area Office of HUD issued a mailgram to all Section 236 project owners in Connecticut, including the three project owners in the instant cases, informing them that as a result of the stay issued by the Second Circuit, no operating cost subsidies would be paid after January 31, 1977.

13. On March 7, 1977, plaintiffs filed the present motion for contempt.

## II.

Plaintiffs argue that the termination of subsidy payments to the three projects is contemptuous of the December 15, 1975 preliminary injunction. The crux of their position is that the Second Circuit's stay could not affect the relief granted to them because the December 15, 1975 preliminary injunction was never appealed. Defendants respond that the May 27, 1976 order, which has been appealed, subsumed all previous orders of this court. Hence, they contend that the stay of that ruling applies to the relief granted to the instant plaintiffs. In essence, the question is whether the May 27, 1976 conversion and expansion of the individual classes certified by project into one statewide class served to merge all earlier relief and reopen and render appealable previously final orders for which the time for appeal had expired.

## A.

■ The class action is a significant tool of judicial administration. Its purpose is to enable representative parties to litigate in a single lawsuit legal questions common to a class of persons. In this way, the class action eliminates the possibility of repetitious actions. While this management device brings under the umbrella of a single lawsuit a large number of individual claims all of which present a common legal question, it does not eliminate each class member's individual cause of action. This distinction between common legal questions which make class action status desirable and the continued presence of individual causes of action is critical to the resolution of the present motion.

■ The common legal question involved in this litigation is the proper construction of HUD's duty under Section 212 of the Housing and Community Development Act of 1974. However, the individual causes of action of the tenants at the various Section 236 projects, which were triggered by HUD's approval of rent increases, have arisen at different points in time. It is for this reason that the preliminary relief granted on behalf of the initial three projects on December 15, 1975, was not subsumed in the relief granted to newly added class members on May 27, 1976.

This analysis is reflected in this court's May 27, 1976 ruling. Because of the multiplicity of litigation on the same issue that was developing in this district, plaintiffs' motion to convert the individual classes certified by project into one statewide class was granted. However, the rent increases and hence the causes of action of the tenants of the newly added projects did not arise until after the issuance of the Decem-

---

1. The nationwide class involved in *Underwood v. Harris* has been amended to exclude the Connecticut statewide class.

ber 15, 1975 preliminary injunction. As such, it was recognized that additional preliminary relief was necessary to confer the benefits of the *existing* preliminary injunctive relief on the tenants of the newly added projects. To this end, a *second* preliminary injunction was issued enjoining HUD from refusing to pay operating cost subsidies to each newly added project owner.

That the May 27, 1976 injunctive relief did not subsume the earlier December 15, 1975 preliminary injunction is conclusively revealed by the fact that the later injunction ordered HUD to make the subsidy payments "commencing with the rental payments due June 1, 1976, or the effective date of the rent increase, whichever is later." May 27, 1976 Ruling at 6. However, the relief initially ordered in December 1975 required the payment of operating subsidies coterminous with the effective date of the rental increases at the initial three projects, that is, October 1, 1975 and November 1, 1975. Clearly, it was not this court's intention to supplant this earlier relief by requiring that subsidies paid to these three project owners be legally required only as of June 1, 1976.

We are dealing here with preliminary relief pending the final determination on the merits. The class action device allows for a single final order with full res judicata effect. However, at this preliminary stage, because some claims arose after the issuance of the December 15, 1975 preliminary injunction, the issuance of separate and distinct preliminary injunctions has been necessary. Consequently, as of June 1, 1976, two separate and distinct preliminary injunctions were in effect; one dated December 15, 1975, and one dated May 27, 1976.

**B.**

A preliminary injunction is an appealable order under 28 U.S.C. § 1292(a). Thus, defendants could have appealed the December 15, 1975 preliminary injunction to the Second Circuit, and they could have sought a stay of that order pending the appeal. However, defendants chose not to follow that course. While they have appealed the May 27, 1976 ruling, that appeal does not reopen the previously final December 15, 1975 order for which the time for appeal had run. 7 *Moore's Federal Practice* ¶ 110.20[2], at 238–39 (1975).

An interlocutory appeal carries with it all previous orders and rulings only to the extent that they are subsumed into the appealed ruling. *United States v. Fort Sill Apache Tribe of the State of Oklahoma*, 507 F.2d 861, 864, 205 Ct.Cl. 805 (1974). As previously analyzed, the December 15, 1975 preliminary injunction was not subsumed in the relief ordered on May 27, 1976. Of course, "[i]f no stay has been obtained, an injunction that the district court has granted remains in effect." Wright and Miller, *Federal Practice and Procedure*: Civil § 2904, at 314 (1973). Therefore, defendants remain bound to obey the December 15, 1975 preliminary injunction, and the termination of subsidy payments to the three projects is in non-compliance of that order.

**III.**

There remains only the question of what relief is appropriate in light of the defendants' non-compliance. Surely, defendants had doubts about the scope of the Second Circuit's stay and the continuing effect of the December 15, 1975 preliminary injunction. However, the proper way to raise those questions is by a motion for clarification or a motion for modification.[2]

2. In their Memorandum in Opposition, defendants argue that if this court concludes, as it has, that the projects in *Dubose, Little* and *Walter* are outside the scope of the May 27, 1976 preliminary injunction, then it should issue a stay of the relief granted in these cases. However, defendants have made no formal motion for a stay or for modification. While the court has power to *sua sponte* modify its own injunction, *McDowell v. Celebrezze*, 310 F.2d 43 (5th Cir. 1962), this is not an appropriate case in which to do so. There are important questions which need to be argued and briefed before such a motion could be ruled upon. For

Defendants were not free to act before taking the proper steps to resolve their doubts. *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. Partin*, 524 F.2d 992, 999 (5th Cir. 1975). Accordingly, it would be within this court's discretion to hold defendants in contempt. *Class v. Norton*, 507 F.2d 1058, 1060 (2d Cir. 1974).

Nevertheless, I am not convinced that defendants acted in bad faith or out of a willful purpose to disobey the orders of this court. There were ambiguities in the situation confronting them. Therefore, I do not grant plaintiffs' motion for contempt. Rather, I trust that this opinion is sufficient to clarify defendants' duty to obey the December 15, 1975 preliminary injunction and to make the operating cost subsidy payments to the three projects involved in the instant actions.

Plaintiffs' motion for contempt is denied; but defendants are required to comply with the December 15, 1975 preliminary injunction issued by this court.

SO ORDERED.

example, does the Second Circuit's stay of the May order justify a stay of the earlier order? What are the equitable considerations in continuing payments to some projects, while staying them as to others?