CALVIN KLEIN COSMETICS
CORPORATION, Appellant,

v.

PARFUMS DE COEUR, LTD., Robert
Baker, Inc., d/b/a Robert Baker
Associates, Appellees.

CALVIN KLEIN COSMETICS
CORPORATION, Appellee,

v.

PARFUMS DE COEUR, LTD., Robert
Baker, Inc., d/b/a Robert Baker
Associates, Appellants.

CALVIN KLEIN COSMETICS
CORPORATION, Appellant,

v.

PARFUMS DE COEUR, LTD. and
Robert Baker, Inc., d/b/a Robert
Baker Associates, Appellees.

Nos. 86–5266, 86–5297 and 87–5215.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1987.

Decided July 29, 1987.

Alan G. Carlson, Minneapolis, Minn., for appellant.

Allen Hinderaker, Minneapolis, Minn., for appellees.

Before LAY, Chief Judge, WOLLMAN and MAGILL, Circuit Judges.

LAY, Chief Judge.

This appeal is from the district court's [1] denial of several preliminary injunction motions brought by Calvin Klein Cosmetics Corporation (Calvin Klein) against Parfums de Coeur, Ltd. and Robert Baker, Inc. (Parfums). Parfums cross-appeals from that portion of one of the district court's orders that enjoined Parfums from future violations of federal trademark law. We affirm the district court's denial of Calvin Klein's motions and vacate the district court's order to the extent that it instructs Parfums to "obey the law."

## I. June 30, 1986, Order

### Calvin Klein's appeal

Calvin Klein distributes high-priced fragrance products under the registered trademark OBSESSION through prestigious department stores and has spent substantial sums to advertise these products. Par-

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

fums manufactures an imitation of the OBSESSION scent, which it calls CONFESS and which it markets as part of its "Designer Imposters" [sic] line of designer perfume imitations. Parfums distributes the CONFESS fragrance in the form of a body spray and spray cologne [2] through discount retailers and drugstore chains at prices far below those of OBSESSION products.[3]

Parfums' body spray container displays the slogan, "If you like OBSESSION you'll love CONFESS." Body spray containers are sold both with and without an accompanying store display that bears the slogan "If you like OBSESSION by CALVIN KLEIN, you'll *love* CONFESS." In both slogans, the word CONFESS is printed in bolder type than the other words, and the terms OBSESSION and CALVIN KLEIN are both denoted as registered marks through the use of the ® registered trademark symbol. Near the bottom of the store display appear the words "Fragrance Body Spray" and "Designer Imposters by Parfums de Coeur."

Calvin Klein filed a motion for a preliminary injunction, seeking to enjoin all of Parfums' packaging and promotional materials and all use by Parfums of the "like/love" slogan. A hearing was held and both parties submitted supporting material for the district court's consideration, including affidavits and depositions of experts. Calvin Klein also submitted the results of a consumer survey it had commissioned, and Parfums submitted its own expert's analysis of the survey results. In an order filed June 30, 1986, the district court found that the information on the body spray container viewed as a whole was ambiguous and did not provide sufficient information for the consumer to adequately compare the two products, thus creating a likelihood of consumer confusion as to the source or origin of CONFESS and its relationship to OBSESSION. Finding that Calvin Klein would probably succeed on the merits at trial, the district court preliminar-

ily enjoined distribution or sale of the body spray container. It did not, however, enjoin the use of the "like/love" slogan itself but stated that the "like/love" phrase could be used in conjunction with appropriate disclaimers or other source-identifying information. The district court also refused to preliminarily enjoin the store display, finding that the display's combination of the "like/love" slogan with the phrase "Designer Imposters by Parfums de Coeur" adequately informed consumers as to the source of CONFESS and invited consumers to compare the two products in a manner that lessened the likelihood of confusion. Finally, the district court included in its order as Paragraph 1(b) language prohibiting Parfums from "[u]sing any packaging, labeling, display materials, or other advertising or promotional materials in connection with CONFESS products which are likely to confuse, deceive, or mislead the public into believing that CONFESS products are associated with, sponsored by, or otherwise affiliated with OBSESSION products or plaintiff Calvin Klein Cosmetics Corporation."

Whether a motion for a preliminary injunction should be granted in whole or in part lies within the sound discretion of the district court. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981). In exercising this discretion, the district court analyzed the evidence before it under the *Dataphase* factors to consider the threat of irreparable harm to the movant, the state of the balance between this harm and the injury that granting the injunction will inflict on others, the probability that the movant will succeed on the merits, and the public interest. *Id.* at 113–14. As is always true when weighing these factors to determine whether the extraordinary relief of a preliminary injunction should be granted, no single factor is in itself dispositive; all of the factors must be considered to determine whether on balance they tip towards granting injunctive relief. *Id.* at 113. "On appeal, this court may not disturb

---

**2.** Parfums has introduced or intends to introduce in the near future additional CONFESS products.

**3.** The 2.5 ounce CONFESS body spray container costs approximately three dollars; OBSESSION products retail for up to 160 dollars for one ounce of perfume.

the district court's balancing of the equities absent a clearly erroneous factual determination, an error of law, or an abuse of discretion." *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 503 (8th Cir.1987).

Calvin Klein contends that by selling fragrance products whose labels and promotional materials prominently display the OBSESSION trademark, Parfums infringes on Calvin Klein's trademark rights in violation of sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) (1982), and in violation of state law. Calvin Klein contends that the district court should have enjoined the distribution of all Parfums products that carry the "like/love" slogan, including the store displays, claiming that the court found that the slogan has inherent informational ambiguities that create likely consumer confusion. However, we believe that the district court did not abuse its discretion in expressly refusing to preliminarily enjoin all uses by Parfums of the "like/love" slogan. "Like/love" slogans have been found by courts both to contribute to likely consumer confusion, *see, e.g., Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc.*, 636 F.Supp. 433, 438 (S.D.N.Y. 1986), and to *not* create likely consumer confusion, *see, e.g., Saxony Products, Inc. v. Guerlain, Inc.*, 513 F.2d 716, 723 (9th Cir.1975). In reaching either conclusion, courts do not focus solely on the "like/love" slogan but on the overall context in which that phrase appears. *Compare Charles of the Ritz*, 636 F.Supp. at 435–38 (use of "like/love" slogan on perfume imitator's products and promotional materials found likely to confuse consumers and enjoined where imitator's packaging was similar in size and appearance to original, mark of imitator's manufacturer and disclaimer of origin not readily visible to consumer at point of sale, and both products appeared on same merchandiser shelves) *with Saxony*, 513 F.2d at 723 (summary judgment for perfume imitator proper where insufficient evidence presented that use of "like/love" slogan in advertising and displays for imitation of high-

priced perfume would likely confuse customers as to source of imitator's product).

The district court correctly recognized that numerous factors may be weighed in determining whether there is a likelihood of confusion and that no one factor is dispositive in reaching that conclusion. *See SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980) (listing factors). Factors that the district court weighed here include the OBSESSION mark's strength as a widely recognized trademark, the close relationship between CONFESS and OBSESSION products, and the manner in which the OBSESSION mark is used by Parfums. In enjoining the body spray container but not the store display, the district court found that while the slogan does invite consumers to compare CONFESS with OBSESSION, the spray container as a whole was insufficient to denote the source of CONFESS as a Parfums, not a Calvin Klein, product. It specifically contrasted the container design with Parfums' prominent uses of the phrase "Designer Imposters by Parfums de Coeur" on the store display, which it found adequately cured any likely confusion as to source. A manufacturer does not commit unfair competition merely because it refers to another's product by name in order to win over customers interested in a lower cost copy of that product if the reference is truthful and does not likely confuse consumers into believing that the copy is from the same source as the original. *Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 855 (C.D.Cal.1985). *See Calvin Klein*, 815 F.2d at 503, *citing Smith v. Chanel, Inc.*, 402 F.2d 562, 563–66 (9th Cir.1968) (imitator may use in a truthful way an originator's trademark when advertising that imitator's product is a copy, if that use is not likely to create confusion in consumer's mind as to product's source). In properly looking at the "like/love" slogan's likely effect in the overall context in which it was used, the district court did not clearly err in finding that Calvin Klein failed to show it would probably succeed in demonstrating that Parfums' store displays would

cause likely consumer confusion,[4] and did not abuse its discretion in denying preliminary injunctive relief as to the store display.

### Parfums' Cross-Appeal

■ Parfums requests that this court vacate Paragraph 1(b) of the June 30 order on the grounds that it is prejudicially overbroad and does not conform to the requirements of Fed.R.Civ.P. 65(d). That rule requires that "[e]very order granting an injunction * * * shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail * * the act or acts sought to be restrained." Fed.R.Civ.P. 65(d). Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief, for it is basic to the intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 444, 94 S.Ct. 1113, 1116, 39 L.Ed.2d 435 (1974). Rule 65(d)'s specificity requirement is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing. *Schmidt v. Lessard,* 414 U.S. 473, 476–77, 94 S.Ct. 713, 715–16, 38 L.Ed.2d 661 (1974); *Helzberg's Diamond Shops, Inc. v. Valley*

*West Des Moines Shopping Center, Inc.,* 564 F.2d 816, 820 (8th Cir.1977).

■ Although the degree of particularity required of an injunction depends on the subject matter involved, *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.,* 685 F.2d 78, 83 (3d Cir.1982), we agree with Parfums that Paragraph 1(b) too broadly requires Parfums to guess at what kind of conduct would be deemed trademark infringement. Moreover, the proceedings to date reveal that the very harm that the specificity requirement is designed to protect against has occurred here in the form of repeated contempt motions brought by Calvin Klein against Parfums, all of which, as far as this court can determine, have been denied by the district court. In view of these circumstances, we vacate Paragraph 1(b) of the district court's June 30, 1986, order.

### II. May 12, 1987, Orders

On October 28, 1986, Parfums moved for modification or clarification of the district court's June 30 order, requesting that the court approve a "snipe," or disclaimer sticker, which would bear the words "Designer Imposters," "Designer Quality Fragrances, Not Designer Prices," and "Parfums de Coeur." Parfums proposed that the June 30 order be modified to allow the body spray container to be sold provided this sticker was securely and prominently affixed to the container body. On November 17, 1986, Calvin Klein filed another motion for a temporary restraining order, preliminary injunction, and contempt order. It sought to enjoin Parfums from market-

---

**4.** In addition, Calvin Klein argues that the district court erred in failing to give adequate weight to the results of a survey it submitted as proof that a majority of consumers surveyed were in fact confused by the "like/love" slogan on the store display. Proof of actual confusion, while highly probative on the issue of likely confusion, is not dispositive in finding trademark infringement. *SquirtCo,* 628 F.2d at 1091. Even if the survey submitted by Calvin Klein does demonstrate some measure of actual consumer confusion, the district court acted within the bounds of its discretion in reviewing the survey evidence and affidavits of experts regarding the methodology used in conducting the survey, but choosing not to give the survey results conclusive weight. *See Calvin Klein,* 815

F.2d at 504 (court has broad discretion on preliminary injunction motion in weight it chooses to give materials submitted by the parties).

Calvin Klein also argues that the key question in a trademark infringement action is whether more than a de minimis number of consumers are likely to be confused, and that in analyzing the effect of the "like/love" slogan, the district court incorrectly reduced all consumers to a single hypothetical consumer. We disagree. In applying principles of trademark law, courts commonly refer to "the consumer," much like the references made to "the reasonable person" in resolving questions of tort law. We find no error of law in the district court's references to "the consumer."

ing any fragrance product bearing the "like/love" slogan and the OBSESSION trademark, to have Parfums held in contempt for selling CONFESS body spray or spray cologne without appropriate disclaimers or displays, to require Parfums to obtain court permission before selling any future products bearing the OBSESSION mark, to recall all CONFESS products from distribution, and to award costs, fees, and damages to Calvin Klein. On December 23, 1986, Calvin Klein also filed a motion for a contempt order and to preliminarily enjoin Parfums from using scented strips of paper coated with the CONFESS fragrance as part of a promotional campaign carried in Christmas catalogues distributed by several discount store chains.

Parfums' and Calvin Klein's motions were referred by the district court to a special master pursuant to Fed.R.Civ.P. 53. On January 30, 1987, the special master issued a report recommending that the district court enter an order granting Parfums' requested modification of the June 30 order and denying all relief requested by Calvin Klein in its November 17 motion. In a second report issued on February 3, 1987, the special master treated Calvin Klein's December 23 motion as an extension of the motion for preliminary injunctive relief discussed in the first report. Stating that he found "nothing about the scent strips that might mislead the public into believing that CONFESS products are in any way associated with * * * Calvin Klein," the special master concluded that Calvin Klein had not proved its case and again recommended that the district court deny Calvin Klein's requested relief. After considering Calvin Klein's objections, the district court in two separate orders issued on May 12, 1987, adopted both of the special master's reports and recommendations pursuant to Fed.R.Civ.P. 53(e)(2). Calvin

Klein appeals the modification of the June 30 order and the denials of injunctive relief in the May 12, 1987, orders.[5]

■ Calvin Klein first contends that the district court abused its discretion in adopting the special master's January 30 report and recommendation that the June 30 order be modified to allow Parfums to market the body spray container if a disclaimer sticker were affixed to it. It argues that the disclaimer proposed by Parfums and recommended by the special master is not specific enough to fulfill the requirements established in the June 30 order. In reviewing the denial of a preliminary injunction, the findings of fact as set forth by the special master and adopted by the district court will not be set aside unless those findings are clearly erroneous. *Bio-medicus, Inc. v. Shareholders Comm. in Opposition*, 608 F.2d 1155, 1158 (8th Cir.1979); *see* Fed.R.Civ.P. 53(e)(2) (in non-jury actions the court shall accept the master's findings of fact unless clearly erroneous). Because we find that the special master's findings are supported by the record and that in adopting those findings the district court did not abuse its discretion, we affirm.

Calvin Klein correctly notes that consumer confusion can be avoided through the use of disclaimers that are both prominent and express, *see Toro Co. v. R & R Products Co.*, 787 F.2d 1208, 1214 (8th Cir.1986), and that the district court had found in its June 30 order that the "like/love" slogan as used on the body spray container was ambiguous. It argues that the disclaimer proposed by Parfums is inadequate because it does not distinguish between the sources of the two fragrances, because the sticker is relatively inconspicuous, and because the lettering on the sticker's face is much smaller than that on the body spray

**5.** Briefs and oral argument were originally scheduled only to hear the appeals from the district court's June 30, 1986, order. However, during oral argument this court was made aware for the first time of the district court's May 12, 1987, orders denying Calvin Klein's additional motions for preliminary injunctive relief. To conserve judicial resources and avoid duplicative appeals, this court requested Calvin

Klein's counsel to decide promptly whether it intended to also appeal from the May 12 orders. Upon counsel's decision to appeal, the parties stipulated at this court's request to an expedited briefing schedule and the two appeals were consolidated by this court's own motion. *See Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, No. 86–5266 (8th Cir. May 18, 1987) (unpublished order consolidating appeals).

container itself. However, we believe that the special master could find that the disclaimer was adequate for preliminary injunction purposes to cure any confusion that the court had previously found to be created by the body spray container. The special master correctly noted that the language of the June 30 order suggesting acceptable disclaimer language was phrased in the disjunctive to require that any disclaimer state that CONFESS is an imposter *or* that it is not an OBSESSION product. Moreover, he found that "the disclaimer sticker does tend to draw attention to itself" and concluded that by identifying CONFESS as a "Designer Imposter," the disclaimer invites consumers to compare CONFESS and OBSESSION as products from two distinct sources.

■ Calvin Klein contends that in reviewing the facts before making his recommendation, the special master improperly ignored survey evidence submitted to him and erroneously based his conclusions merely on a visual inspection of the container itself. We disagree. As we have stated before, a visual inspection is permissible as an aid in determining likely confusion if it does not serve as the sole basis for the decision regarding preliminary injunctive relief. *See Calvin Klein*, 815 F.2d at 504. Here, the special master did not rely only on his own visual inspection of the container and the attached disclaimer, but was also guided by the district court's earlier factual findings, which we have determined above to be not clearly erroneous. Moreover, the special master did not disregard Calvin Klein's survey evidence. Rather, he gave the survey little weight at this stage of the proceedings because he had doubts as to its probative value and he was unable to evaluate properly its foundation in the absence of sworn testimony from qualified witnesses who prepared or analyzed the surveys. Because a special master, like a district court, has broad discretion in the weight given to the materials submitted by the parties, *see Calvin Klein*, 815 F.2d at 504, we believe that the special

master could have found under the record before him that Calvin Klein had failed to carry its burden to show that injunctive relief was warranted. In turn, the district court did not abuse its discretion in adopting the special master's recommendation that the June 30 order be modified to allow the body spray container to be sold if the proposed disclaimer sticker was attached.

■ Calvin Klein also argues that the district court abused its discretion in adopting the special master's February 3 recommendation that the district court deny Calvin Klein's motion to enjoin Parfums' use of scent strips in its advertising. These scent strips, which depicted a spray cologne bottle and package [6] that did not carry disclaimer language, were placed in the Christmas catalogues of several discount store chains. The special master found that these retail outlets stood at a great competitive distance from the quality department store venues in which Calvin Klein markets OBSESSION products. Moreover, presuming that the catalogues in which the scent strips were inserted had been distributed to consumers some weeks prior to Calvin Klein's December 23, 1986 motion, the special master found that recalling the catalogues "would be an exercise in futility." We believe that the district court did not abuse its discretion in adopting the special master's report and recommendation that Calvin Klein's motion to enjoin the scent strips be denied.

### Conclusion

We emphasize that we do not pass on the merits of Calvin Klein's trademark infringement action here but merely find that the district court did not abuse its discretion in denying Calvin Klein's requests for preliminary injunctive relief. If Parfums is in fact infringing on Calvin Klein's trademark rights in OBSESSION, Calvin Klein will have a full opportunity at a plenary trial on the merits to show that infringement. We vacate Paragraph 1(b) of the

---

**6.** Although Calvin Klein correctly notes that the special master erred in identifying the product depicted on the scent strips as a body spray container rather than as spray cologne, we find this to be harmless error.

June 30, 1986, order and affirm the remainder of the June 30 order as modified by the district court's order of May 12, 1987. The May 12 orders adopting the reports and recommendations of the special master are affirmed.